SUMMARY ORDER
ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is VACATED and this case REMANDED to the district court for further proceedings not inconsistent with this opinion.
We assume the parties’ familiarity with the facts and procedural history of this case, as well as the specification of issues on appeal. JP Morgan Securities, Inc. (“Morgan”) appeals from the decision of the district court which, affirming the decision of the bankruptcy court, found as a matter of law, without an evidentiary hearing or discovery, that Morgan was not entitled to a $3.5 million transaction fee, or additional expenses incurred, for financial services provided to Speigel, Inc. (“Spiegel”) under the terms of an Engagement Letter entered into by the parties. By the terms of the Engagement Letter, a “Transaction,” in which a new entity acquired “a material portion of the ... businesses of [Spiegel’s credit card business],” would trigger the fee. The bankruptcy court and the district court each concluded that an agreement (the ‘World Financial Agreement”) between Spiegel and World Financial Network National Bank (‘World Financial”), which gave World Financial the exclusive right to issue and process private label credit cards on behalf of various retail merchants owned by Spiegel, did not constitute a “Transaction” within the meaning of the Engagement Letter because it did not result in an “acquisition [by World Financial] ... of a material portion of the assets, properties and/or businesses of [Spiegel’s credit card businesses].”
Previously, First Consumers National Bank (“FCNB”), a wholly owned subsidiary of Spiegel, issued private label credit cards on behalf of Spiegel and its Merchant Subsidiaries, and processed payments for purchases under credit cards. Spiegel contracted with Morgan to help Spiegel find a new entity to handle Spiegel’s credit card business. Following Spiegel’s entry into the Engagement Letter with Morgan, FCNB was closed by the Office of the Comptroller of the Currency. This brought to a halt the operation of Spiegel’s private label credit card business. Thereafter Spiegel resuscitated its private label credit card business by making its agreement with World Financial. Under this agreement, World Financial caused the issuance of new private label credit cards, and processed the customers’ purchase transactions made with these cards under the terms of the World Financial Agreement. Morgan contends that this transaction between Spiegel and World Financial entitled it to the fee.
The bankruptcy court disallowed Morgan’s claim because, under its view, the Engagement Letter’s definition of “Transaction” (triggering payment of the fee) required “some type of sale,” and the *411 World Financial Agreement was not a sale. The district court disagreed with the bankruptcy court’s reasoning but reached the same result. According to the district court’s view, the definition of Transaction required that the new arrangement be an “acquisition,” and an “acquisition” “requires continuity in the subject matter being transferred.” Following the liquidation of FCNB, the court reasoned, “there were no assets, properties and/or businesses of Spiegel for World Financial to gain possession or control over. Accordingly, no transaction as contemplated by the engagement letter ... occurred.”
We agree with the district court’s rejection of the bankruptcy court’s reasoning. The express terms of the Engagement Letter make clear that no sale is required. Paragraph (c) provides that the Transaction may be “by way of [not only] a direct or indirect purchase [but also by] lease, license, exchange, joint venture, or other means, including, but not limited to, any agreement ... with respect to the future origination of credit cards.” The district court was correct to reject the bankruptcy court’s hypothesis that a “sale” was required.
In our view, however, the reasons given by the district court for disallowing the claim were also invalid. It is true, as the court observed, that the individual credits processed by World Financial under its agreement with Spiegel were not the same credits and payments as had been processed by FCNB. But we see nothing in the Engagement Letter that required transfer of the very same transactions or credits to the acquiring entity.
Although we reject the reasons given by both the bankruptcy court and the district court for the disallowance of Morgan’s claim, we cannot be certain on the sparse record available to us whether Morgan was entitled to the fee. The district court concluded that there was no ambiguity in the terms of the Engagement Letter because “[t]he parties agree that [its] terms ... are plain and unambiguous.” The problem is, however, that while each of the parties asserts that the contract is plain and unambiguous, each argues that the contract plainly and unambiguously means something different from what the other side contends. It does not necessarily follow that the contract is plain and unambiguous. We express no view as to whether there are ambiguities in the Engagement Letter or other factual issues, which may affect the resolution of this dispute. Having rejected the reasons given by the bankruptcy court and the district court for disallowance of Morgan’s claim, we vacate the dismissal of Morgan’s claim and remand for further proceedings.
On the other hand, we find that the Engagement Letter unambiguously entitles Morgan to be reimbursed for its “reasonable expenses as incurred,” irrespective of whether any “Transaction” or other condition occurred. Spiegel conceded as much at oral argument. On remand, the district court should determine the reasonableness of Morgan’s claimed expenses and award the appropriate amount.